UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.
JUN 10 2015
BY _____ DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | NO. 3:15-00078 |
| ) | |
| VLAD DIACONU ) | 18 U.S.C. § 1343 |
| ) | 18 U.S.C. § 1344 |
| ) | 18 U.S.C. § 1349 |
| ) | 18 U.S.C. § 981(a)(1)(C) |
| ) | 28 U.S.C. § 2461(c) |

# INDICTMENT

## COUNT ONE

THE GRAND JURY CHARGES THAT:

### General Allegations and Definitions

At all times material to this Indictment:

1. The Internet was a global network connecting millions of computers and computer networks to each other. Using, among other things, a system of wires, cables, routers, and circuits, the Internet allowed the communication and transfer of information in interstate and foreign commerce.

2. One type of information transferred across the Internet was email, which is an electronic communication or message sent via the Internet.

3. Online marketplaces are websites that allow goods and services to be sold and traded over the Internet. Examples of online marketplaces include eBay and Autotrader. Each online marketplace operates an interactive online auction and/or shopping service where

individuals can list items, including vehicles, for sale. Payments for listed items are often made and accepted through channels not controlled by the online marketplace.

4. Bank of America and Fifth Third Bank were financial institutions as defined by Title 18, United States Code, Section 20 whose deposits were insured by the Federal Deposit Insurance Corporation.

5. A particular married couple known to the grand jury and collectively referred to herein as "the Victim Couple," resided within the Middle District of Tennessee. The Victim Couple utilized particular email addresses known to the grand jury and referred to herein as "Email Address 1" and "Email Address 2."

6. From as early as 2011, the exact date being unknown to the Grand Jury, and continuing to a date uncertain, but at least as late as July 2013, in the Middle District of Tennessee and elsewhere, **VLAD DIACONU** did willfully, knowingly, and unlawfully combine, conspire, confederate, and agree with persons both known and unknown to the Grand Jury to commit certain offenses, including the following:

    a. To devise a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises and to transmit and cause to be transmitted by means of wire communications writings, signs, signals, pictures, and sounds for the purpose of executing such scheme, in violation of Title 18, United States Code, Section 1343; and

    b. To knowingly execute a scheme to defraud a financial institution and to obtain moneys, funds, credits, and other property owned by and under the custody and control of a financial institution by means of false and fraudulent pretenses,
2

representations, and promises, in violation of Title 18, United States Code, Section 1344.

## Object of the Conspiracy

7. It was a goal of the conspiracy for the conspirators to unjustly enrich themselves by unlawfully inducing individuals to send, typically via wire transfer, payment for the purchase of high-value items including vehicles that were listed for sale on online marketplaces and in newspapers to bank accounts controlled by conspirators without ever intending to deliver such items to the purchasers.

## Manner and Means of the Conspiracy and Scheme and Artifice

8. It was a part of the conspiracy and the manner and means of the scheme the conspiracy sought to accomplish that, from as early as 2011 through as late as July 2013:

   a. Conspirators used computers and the Internet to cause the posting in interstate and foreign commerce of fraudulent advertisements at online marketplaces and caused the publication of fraudulent advertisements in newspapers. These advertisements offered items including vehicles for sale when, in truth and fact, the goods were not available for purchase from the conspirators.

   b. Conspirators corresponded with unwitting victims in the United States and abroad who were interested in buying the items fraudulently listed for sale at the online marketplaces and in newspapers. This correspondence occurred via methods including email sent via the Internet, via text message, and via phone. When corresponding with victims, conspirators typically posed as the sellers of

3

the items fraudulently listed for sale, but also occasionally posed as employees of legitimate third-party entities including Google Wallet.

c. Once a victim indicated they wanted to purchase an advertised item, conspirators sent the victim payment instructions via email. These emails instructed the victim to send their payment to a particular bank account and often purported to be from a legitimate third-party entity such as eBay or Google Wallet. Victims typically sent such payments to the designated bank accounts via wire transfer. Typically, the bank accounts to which victims were instructed to send payment would purportedly serve as an escrow account for the transaction. In truth and fact, the bank accounts to which victims were instructed to send payment were controlled by conspirators, and the victims never received the items for which they paid.

d. Conspirators, including **VLAD DIACONU**, opened bank accounts at financial institutions, including Bank of America, for the purpose of receiving payments from the victims of this scheme. When opening these accounts, conspirators, including **VLAD DIACONU**, used aliases and fraudulent, counterfeit, and forged identity documents, including passports.

e. Once the victim's payment was deposited, conspirators, including **VLAD DIACONU**, forwarded a portion of the funds to co-conspirators located abroad by methods including wire transfer to bank accounts located abroad. Conspirators, including **VLAD DIACONU**, also withdrew funds from the bank accounts into which victims deposited funds in cash, sometimes in amounts of thousands of

4

dollars at a time, and by making purchases with the debit cards associated with the accounts.

## Overt Acts

9. In furtherance of this conspiracy, and to effect the objects and purposes thereof, various acts were committed by **VLAD DIACONU** and others known and unknown to the Grand Jury, within the Middle District of Tennessee and elsewhere, including but not limited to the following:

   a. Between on or about May 12, 2013 through on or about May 21, 2013, one or more members of the conspiracy using the email address james44peterson@optimum.net transmitted wire communications, specifically email messages pertaining to a 2008 Mercedes-Benz GL450, to the Victim Couple via Email Address 1 and Email Address 2. The Victim Couple received and read these emails in locations including within the Middle District of Tennessee.

   b. On or about May 14, 2013, one or more members of the conspiracy transmitted a wire communication, specifically an email message that purported to be an invoice from eBay with respect to the 2008 Mercedes-Benz GL450, to the Victim Couple, who received and read this email within the Middle District of Tennessee, via Email Address 1.

   c. On or about May 15, 2013, one or more members of the conspiracy caused the Victim Couple to wire $17,000 from their account at Fifth Third Bank to a Bank of America account opened by **DIACONU** using the alias Lucas Armand ("the

5

Armand account"). The Victim Couple initiated the wire transfer by sending a fax to Fifth Third Bank while located within the Middle District of Tennessee.

d. On or about the dates stated below, one or more members of the conspiracy caused the victims listed below to wire the identified payments to bank accounts opened by **VLAD DIACONU**:

  i. On May 10, 2013, Victim 2 wired $8450 to a Bank of America account held in the name Marcel Lacroix ("the Lacroix account");

  ii. On May 15, 2013, Victim 3 wired $22,000 to the Armand account;

  iii. On May 17, 2013, Victim 4 wired $14,200 to the Lacroix account;

  iv. On May 21, 2013, Victim 5 wired $14,000 to a Bank of America account held in the name Adrian Colbert;

  v. On May 23, Victim 6 wired $13,800 to a Bank of America account held in the name Antoine Lacrosse ("the Lacrosse account");

  vi. On May 31, 2013, Victim 7 wired $12,000 to the Lacrosse account;

  vii. On June 3, 2013, Victim 8 wired $35,000 to a Bank of America account held in the name Dennis Cornett;

  viii. On June 19, 2013, Victim 9 wired $9000 to a Bank of America checking account held in the name Adam Jansen;

  ix. On July 1, 2013, Victim 10 wired $25,475 to a Bank of America savings account held in the name Adam Jansen;

  x. On July 5, 2013, Victim 11 wired $9000 to a Bank of America account held in the name Thomas Coenen ("the Coenen account"); and

  xi. On July 5, 2013, Victim 12 wired $4975 to the Coenen account.

6

In violation of Title 18, United States Code, Sections 1349, 1343, and 1344.

COUNTS TWO THROUGH ELEVEN

THE GRAND JURY FURTHER CHARGES:

1. The allegations of paragraphs 1-9 of Count One of the Indictment are incorporated by reference as if set forth fully herein.

2. Beginning as early as 2011, the exact date being unknown to the grand jury, through at least as late as July 2013, **VLAD DIACONU** devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by false and fraudulent pretenses, representations, and promises from, victims by inducing them to send, typically via wire transfer, payment for vehicles fraudulently listed for sale at online marketplaces and in the newspaper to particular bank accounts and failing to deliver said vehicles to the victims.

Manner and Means

3. It was part of the scheme that fraudulent advertisements offering vehicles for sale were placed at online marketplaces and published in newspapers.

4. It was further part of the scheme that victims were contacted by and corresponded with the purported sellers of the vehicles listed for sale in the fraudulent advertisements via means including email.

5. It was further part of the scheme that, after victims expressed interest in purchasing the vehicles fraudulently listed for sale, they were sent payment instructions via email. These emails instructed the victims to send their payment to a particular bank account and often purported to be from a legitimate third-party entity such as eBay or Google Wallet.

Typically, the designated bank account would purportedly serve as an escrow account for the transaction. Victims typically sent such payments to the designated accounts via wire transfer, and the victims never received the vehicles for which they paid.

6. It was further part of the scheme that aliases and fraudulent, counterfeit, and forged identity documents, including passports, were used to open the bank accounts to which victims were instructed to send their payments.

7. It was further part of the scheme that the victims' payments were withdrawn from the recipient bank accounts via a variety of methods, including wire transfers, cash withdrawals, and debit card purchases.

8. On or about the dates set forth below, in the Middle District of Tennessee and elsewhere, for the purpose of executing the scheme described above, **VLAD DIACONU** transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce certain writings, signs, and signals, specifically email messages to the Victim Couple who received such messages in the Middle District of Tennessee, each transmission constituting a separate count, as set forth below:

| Count | Date | Description of Wire |
|---|---|---|
| Two | May 12, 2013 | Email from james44peterson@optimum.net to Email Address 1 inquiring whether the Victim Couple was still interested in purchasing a Mercedes-Benz GL450 for $17,000 |
| Three | May 14, 2013 | Email from james44peterson@optimum.net to Email Address 2 providing details pertaining to the 2008 Mercedes-Benz GL450 purportedly for sale (including but not limited to mileage and safety features) and stating that "I want the transaction to be handled by eBay vehicle Purchase Protection" |
| Four | May 14, 2013 | Email from james44peterson@optimum.net to Email Address 2 stating that the Mercedes-Benz GL450 was located in Phoenix, Arizona |
| Five | May 14, 2013 | Email from james44peterson@optimum.net to Email Address 2 stating "I'll start the registration process with ebay and you will receive the information you need from them shortly, via email" |

8

| Six | May 14, 2013 | Email purporting to be from eBay sent to Email Address 1 and titled "eBay Motors Payment Invoice #2150487290 – 2008 Mercedes-Benz GL450 4MATIC" |
|---|---|---|
| Seven | May 14, 2013 | Email from james44peterson@optimum.net asking if the Victim Couple had received the invoice from eBay |
| Eight | May 15, 2013 | Email from james44peterson@optimum.net to Email Address 2 stating "Please let me know when you can make the payment" |
| Nine | May 15, 2013 | Email from james44peterson@optimum.net to Email Address 2 stating that "payment verification process usually takes less than 24 hours" and "[t]he car is ready for shipping" |
| Ten | May 16, 2013 | Email from james44peterson@optimum.net to Email Address 2 stating "I just received the confirmation from eBay" and "I'll start the shipping" |
| Eleven | May 21, 2013 | Email from james44peterson@optimum.net to Email Address 2 stating that the Mercedes-Benz would be delivered "[F]riday afternoon, 5-6pm" |

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATIONS

1. The allegations contained in this Indictment are re-alleged and incorporated by reference as if fully set forth in support of this forfeiture.

2. Upon conviction of any offense contained in this Indictment, **VLAD DIACONU** shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 981(a)(1)(C) and 28 United States Code, Section 2461, any property which constitutes or is derived from proceeds traceable to a violation of 18, United States Code, Section 1343, including but not limited to a money judgment of at least $873,325 United States currency, representing the amount of gross proceeds obtained as a result of such offense.

3. If any of the property described above, as a result of any act or omission of **VLAD DIACONU**:

9

a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property, and it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of **VLAD DIACONU**, up to the value of said property listed above as subject to forfeiture.

A TRUE BILL



FOREPERSON

_____
DAVID RIVERA
UNITED STATES ATTORNEY

_____
BYRON M. JONES
ASSISTANT UNITED STATES ATTORNEY

10

Case 3:15-cr-00078   Document 3   Filed 06/10/15   Page 10 of 10 PageID #: 12