UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:15-00078 |
| | ) | Judge Aspen |
| | ) | |
| VLAD DIACONU. | ) | |

PETITION TO ENTER A PLEA OF GUILTY

I, **VLAD DIACONU**, respectfully represents to the Court as follows:

(1) My true name is **Vlad Diaconu**. I was born in **Bucharest, Romania** on **August 1, 1980** and I have received a **Bachelors Degree**.

(2) My ~~retained~~ Appointed lawyer is **LUKE A. EVANS**.

(3) I have received a copy of the ~~information~~ Indictment before being called upon to plead and have read and discussed it with my lawyer, and believe and feel that I understand every accusation made against me in the ~~information~~ Indictment.

(4) I have had sufficient opportunity to discuss with my lawyer the facts and surrounding circumstances concerning the matters mentioned in the ~~information~~ indictment. My lawyer has counseled and advised with me as to the nature and cause of every accusation against me. We have thoroughly discussed the government's case against me and my potential defenses to the government's case. My lawyer has explained each element of the crime charged to me and what the government would offer to prove these elements beyond a reasonable doubt.

(5) I understand that the statutory penalty for each of the offenses with which I am charged is as follows:

a. Count 1 – Conspiracy to Commit Wire and Bank Fraud, in violation of 18 U.S.C. §1349.

i. not more than 30 years,
ii. restitution -Mandatory,
iii. a fine of up to $ 1,000,000.00
iv. a mandatory $100 special assessment, and
v. a term of supervised release of not more than 5 years.

b. Counts 2 through 11 – Wire Fraud, in violation of 18 U.S.C. §1343. Each count provides as follows:

i.       not more than 20 years,

ii.   restitution –Not applicable,
iii.  a fine of not more than $ 250,000.00
iv.   a mandatory $100 special assessment, and
v.    a term of supervised release of not more than 3 years.


(6) I have been advised that I will be sentenced to a sentence sufficient but not greater than necessary to satisfy the goals of sentencing specified in 18 U.S.C. § 3553(a). One consideration will be Guidelines established by the United States Sentencing Commission. I understand that these Guidelines are advisory, but that the Court must take account of the Guidelines together with other sentencing goals. My lawyer and I have discussed the calculation of the Guidelines in my case. My lawyer has given me an estimate of the Guidelines range that may apply in my case.

**MY LAWYER HAS ESTIMATED MY BASE OFFENSE GUIDELINE RANGE TO BE 27, AND, AFTER RECEIVING A TOTAL 3 LEVEL REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY PURSUANT TO U.S.S.G. 3E1.1 (a) AND (b), MY "RECOMMENDED OFFENSE LEVEL" TO BE 24. THEREFORE, MY LAWYER HAS ESTIMATED THAT THE GUIDELINE RANGE IN MY CASE SHOULD BE 51 TO 63 MONTHS.**

I realize that this is simply my lawyer's estimate. I understand that my advisory Guideline range will be calculated by the United States Probation Officer who prepares the presentence report in my case. This estimate is subject to challenge by either me or the government, unless prohibited by a plea agreement. The final Guideline calculation will be made by the Court. I further understand that I may be sentenced to a fine to be calculated through the Guidelines. No fine will be imposed if the Judge finds me unable to pay any fine. Considered in this fine may be the amount of financial loss to the victim or gain to me as well as the costs of any confinement or probation supervision. The Court may also order that restitution be made to any victim of the offense. I have a right to a review of my sentence by the United States Court of Appeals for the Sixth Circuit unless waived in the plea agreement.

(7) I understand that I am not eligible for a sentence of probation if I receive any sentence of imprisonment or am convicted of a Class A or Class B felony punishable by twenty or more years imprisonment. I have been informed that under the present federal sentencing system there is no parole. I will receive only 54 days good time credit per year and it will not vest until the end of each year. I further understand that if I am sentenced to a period of supervised release and I violate the terms of that supervised release, upon revocation I could be imprisoned again.

(8) I understand that should this plea of guilty be accepted, I will be a convicted felon in the eyes of the law for the rest of my life. This means, under present law that (a) I cannot vote in Tennessee, unless my right to vote is lawfully restored, and may not be eligible to vote in other states; (b) I cannot possess a firearm anywhere; (c) If I am presently on probation, parole, or supervised release whether state or federal, the fact that I have been convicted may be used to revoke my probation, parole or supervised release regardless of what sentence I receive on this

2

case; (d) If I am convicted of any crime in the future, whether state or federal, this conviction may be used to increase that sentence; (e) I may have to disclose the fact that I am a convicted felon when applying for employment and such disclosure may result in my not getting some jobs and having difficulty in getting others. I understand that this list may not include all of the adverse consequences of my conviction in this case.

(9) I understand that I can plead "NOT GUILTY" to the offense charged against me, and continue to plead "NOT GUILTY", and that if I choose to plead not guilty, the Constitution guarantees me (a) the right to a speedy and public trial by jury; (b) the right not to testify and no implication of guilt would arise by my failure to do so; (c) the right to be presumed innocent until such time, if ever, that the government proves my guilt beyond a reasonable doubt to the satisfaction of a court and jury; (d) the right to see and hear all the witnesses and to cross-examine any witness who may testify against me; (e) the right to use the power and process of the court to compel the production of any evidence, including the attendance of any witnesses, in my favor; and to testify in my own behalf if I choose to do so; (f) the right to have the assistance of counsel in my defense at all stages of the proceedings; (g) if I am convicted at such trial I have the right to appeal with a lawyer to assist me and the appeal will not cost me any money if I am indigent. I understand that if the Court accepts my plea that there will be no jury trial and that I will be convicted of the count to which I plead just as if a jury found me guilty of the charge following a trial. The Court may then impose sentence upon me within the limits set forth in any plea agreement stated in paragraph (13), subject to the maximum punishments set forth in paragraph (5).

(10) No officer or agent of any branch of government (federal, state or local), nor any other person, has guaranteed me what sentence I will receive. If there are any agreements between myself and my lawyer and the prosecution concerning my plea they are fully set forth in paragraph (13) below. I understand that even with a plea agreement no person can bind the Judge to give any particular sentence in my case. If the Judge rejects an agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) or (C) I will be offered the opportunity to withdraw my guilty plea. If the Judge rejects a recommendation made pursuant to Rule 11(c)(1)(B) I have no right to withdraw my plea. I understand that if the Judge decides to make a recommendation about where I should serve any incarceration that the recommendation is not a promise or a guarantee, but only a recommendation and is not binding on the Bureau of Prisons which will make the final decision (after I am sentenced) about where I will be incarcerated.

(11) My lawyer has done all the investigation and research in this case that I have asked him to do, and has reviewed with me the government's case against me. I am satisfied with his representation at this point.

(12) Fully understanding my rights to plead "NOT GUILTY" and fully understanding the consequences of my plea of guilty, **I wish to plead "GUILTY" and respectfully request the Court to accept my plea of Guilty to Count 1 – Conspiracy to Commit Wire and Bank Fraud, in violation of 18 U.S.C. § 1349**. This plea is a result of a plea agreement between my lawyer and the prosecution pursuant to the Federal Rules of Criminal Procedure.

(13) The specific terms of the plea agreement are included in the "Plea Agreement" document prepared by Assistant United States Attorney Byron Jones.

(14) I offer my plea of "GUILTY" freely and voluntarily and of my own accord; also my lawyer has explained to me, and I feel and believe I understand this petition.

(15) I am not under the influence of either drugs or alcohol.

(16) I request the Court to enter now my plea of "GUILTY" as set forth in paragraph (12) of this petition, in reliance upon my statements made in this petition.

(17) Recognizing that the Court may reserve acceptance of this plea pending the receipt of the pre-sentence report, I agree that the pre-sentence report may be disclosed to the United States Attorney, my counsel and myself, prior to the sentencing hearing.

Signed by me in open court under the penalties of perjury in the presence of my lawyer, this the _____ day of _____, 2017.

_____
Defendant, Vlad Diaconu


## ACKNOWLEDGMENT OF GOVERNMENT ATTORNEY

The maximum punishment, plea and plea agreement (if any) are accurately stated above.

_____
Lawyer for Government, AUSA Byron Jones


## CERTIFICATE OF COUNSEL

The undersigned, as lawyer and counselor for **Vlad Diaconu** hereby certifies as follows:

(1) I have read and fully explained to **Vlad Diaconu** all the accusations against him in this case;

(2) To the best of my knowledge and belief each statement set forth in the foregoing petition are accurate and true;

(3) In my opinion the plea of "GUILTY" as offered by **Vlad Diaconu** in paragraph (12) of the foregoing petition, is voluntarily and understandingly made; and I recommend to the Court that the plea of "GUILTY" be accepted and entered as requested in paragraph (12) of the foregoing petition.

4

Signed by me in open court in the presence of **Vlad Diaconu** this ___28___ day of
___March___, 2017.

_____
Lawyer for the Defendant, Luke A. Evans

## ORDER

Good cause appearing therefore from the foregoing petition of the foregoing named defendant and the certificate of his counsel and for all proceedings heretofore had in this case, it is ORDERED that the petition be granted and the defendant's plea of "GUILTY" be accepted and entered as prayed in the petition and as recommended in the certificate of counsel.

Done in open court this ___28___ day of ___March___, 2017.

_____

Marvin E. Aspen, Senior United States District Judge

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 3:15-CR-00078 |
| | ) | Judge Aspen |
| VLAD DIACONU | ) | |
| | ) | |
| | ) | |

## PLEA AGREEMENT

The United States of America, through Jack Smith, Acting United States Attorney for the Middle District of Tennessee, Assistant United States Attorney Byron M. Jones, and Trial Attorney Mysti Degani of the United States Department of Justice, and the defendant, Vlad Diaconu, through defendant's counsel, Luke A. Evans, pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, have entered into an agreement, the terms and conditions of which are as follows:

### Charges in This Case

1.      The defendant acknowledges that he has been charged in the indictment in this case with one count of conspiracy to commit wire and bank fraud, in violation of Title 18, United States Code, Section 1349, and ten counts of wire fraud, in violation of Title 18, United States Code, Section 1343.

2.      The defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney. The defendant fully understands the nature and elements of the crimes with which he has been charged.

3.      By this Plea Agreement, the defendant agrees to enter a voluntary plea of guilty to Count 1 of the indictment, charging conspiracy to commit wire and bank fraud. In addition, as further provided below, the defendant agrees to the entry of a forfeiture judgment. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment.

## Penalties

4.      The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum penalties: 30 years of imprisonment, 5 years of supervised release, a $1,000,000 fine, and a $100 special assessment. The defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court. The defendant also understands that, as a result of his offense, he is subject to forfeiture of property as discussed below.

## Acknowledgements and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

5.      This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and the defendant regarding the defendant's criminal liability in case 3:15-CR-00078.

6.      The defendant understands that by pleading guilty he surrenders certain trial rights, including the following:

(a)      If the defendant persisted in a plea of not guilty to the charge against him, he would have the right to a public and speedy trial. The defendant has a right to a jury trial, and

2

the trial would be by a judge rather than a jury only if the defendant, the government, and the Court all agreed to have no jury.

(b) If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause or by removing prospective jurors without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the defendant is presumed innocent; that the government bears the burden of proving the defendant guilty of the charge beyond a reasonable doubt; and that it must consider each count of the indictment against the defendant separately.

(c) If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of the defendant's guilt beyond a reasonable doubt.

(d) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront these government witnesses, and his attorney would be able to cross-examine them. In turn, the defendant could present witnesses and other evidence on his own behalf. If the witnesses for the defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

(e) At a trial, the defendant would have a privilege against self-incrimination so the he could testify or decline to testify, and no inference of guilt could be drawn from his refusal to testify.

3

7.    The defendant understands that by pleading guilty he is waiving all of the trial rights set forth in the prior paragraph.  Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Factual Basis

8.    The defendant will plead guilty because he is in fact guilty of the charge contained in Count 1 of the indictment.  In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

(a)    Beginning at least as early 2011 through at least as late as July 2013, in the Middle District of Tennessee and elsewhere, the defendant did willfully, knowingly, and unlawfully combine, conspire, confederate, and agree with others to commit bank and wire fraud, in violation of Title 18, United States Code, Section 1349.

(b)    As part of the conspiracy, conspirators used computers and the Internet to cause the posting in interstate and foreign commerce of fraudulent advertisements at online marketplaces such as eBay and to cause the publication of fraudulent advertisements in newspapers.  These advertisements offered items including vehicles for sale when, in truth and fact, the goods were not available for purchase from the conspirators.

(c)    As part of the conspiracy, conspirators corresponded with unwitting victims in the United States who were interested in buying the items fraudulently listed for sale at the online marketplaces and in newspapers.  This correspondence typically occurred via e-mail sent via the Internet but also occasionally occurred via other means.  When corresponding with victims, conspirators posed as the sellers of the items fraudulently listed for sale or as employees of legitimate third-party entities.  Once a victim indicated they wanted to purchase an advertised item, conspirators sent the victim payment instructions via e-mail.  These instructions often purported

4

to be from a legitimate third-party entity such as eBay or Google Wallet. Victims were instructed to wire their payment to a particular bank account, which would purportedly serve as an escrow account. In truth and fact, the bank accounts to which victims were instructed to send payment were controlled by conspirators, including the defendant, and the victims never received the items for which they paid.

        (d)     Communications sent by the defendant's co-conspirators as described above and in furtherance of the conspiracy include:

        i.     Wire communications in the form of e-mail messages that were sent between on or about May 12, 2013 through on or about May 21, 2013 and that pertained to a Mercedes-Benz GL450 that was fraudulently listed for sale. These messages were sent by one or more members of the conspiracy using the e-mail address james44peterson@optimum.net to a particular husband and wife, identified in the indictment as the Victim Couple, who received and read these emails in locations including within the Middle District of Tennessee.

        ii.     A wire communication in the form of an e-mail message that was sent on or about May 14, 2013 to the Victim Couple, who received and read this email within the Middle District of Tennessee, and that purported to be an invoice from eBay pertaining to the 2008 Mercedes-Benz GL450.

        (e)     During the course of and in furtherance of the conspiracy, conspirators, including the defendant, opened United States bank accounts for the purpose of receiving

5

payments from the victims of this scheme. When opening these accounts, conspirators, including the defendant, used aliases and fraudulent, counterfeit, and forged identity documents, including passports. One or more such passports contained a sequence of numbers or letters that are used by the issuing authorities to determine if such documents are authentic.

(f)     During the course of and in furtherance of the conspiracy, the defendant traveled to the United States twice – once in 2011 and again in 2013 – for the purpose of opening bank accounts to receive payments from victims of the scheme. During the latter trip, the defendant opened bank accounts at Bank of America using at least 7 different false identities supported by false identity documents (including fraudulent passports). False identities used by the defendant when opening these accounts were Lucas Armand, Thomas Coenen, Adrian Colbert, Dennis Cornett, Adam Jansen, Marcel Lacroix, and Antoine Lacrosse.

(g)     During the course of and in furtherance of the conspiracy, conspirators caused at least 12 individuals to wire transfer $184,900 to bank accounts opened and controlled by the defendant. As described above, the individuals sent these wire transfers under the belief that they were purchasing vehicles available for sale and that had been legitimately offered for such sale at online marketplaces and in newspapers, when in fact the vehicles were unavailable for purchase from, and had been fraudulently listed for sale by, conspirators. The wire transfers sent to accounts controlled by the defendant included the following, which are listed in Count 1 of the indictment:

i.     On or about May 15, 2013, the Victim Couple wired $17,000 from their account at Fifth Third Bank to a Bank of America account held in the name Lucas Armand ("the Armand account"). The Victim Couple initiated the wire transfer by sending a facsimile

6

transmission to Fifth Third Bank from the Middle District of Tennessee.

ii.      On or about May 10, 2013, Victim 2 wired $8450 to a Bank of America account held in the name Marcel Lacroix ("the Lacroix account").

iii.      On or about May 15, 2013, Victim 3 wired $22,000 to the Armand account.

iv.      On or about May 17, 2013, Victim 4 wired $14,200 to the Lacroix account.

v.      On or about May 21, 2013, Victim 5 wired $14,000 to a Bank of America account held in the name Adrian Colbert.

vi.      On or about May 23, 2013, Victim 6 wired $13,800 to a Bank of America account held in the name Antoine Lacrosse ("the Lacrosse account").

vii.      On or about May 31, 2013, Victim 7 wired $12,000 to the Lacrosse account.

viii.      On or about June 3, 2013, Victim 8 wired $35,000 to a Bank of America account held in the name Dennis Cornett.

ix.      On or about June 19, 2013, Victim 9 wired $9000 to a Bank of America checking account held in the name Adam Jansen.

x.      On or about July 1, 2013, Victim 10 wired $25,475 to a Bank of America savings account held in the name Adam Jansen.

7

xi.      On or about July 5, 2013, Victim 11 wired $9000 to a Bank of America account held in the Thomas Coenen ("the Coenen account").

xii.     On or about July 5, 2013, Victim 12 wired $4975 to the Coenen account.

(h)    During the course of and in furtherance of the conspiracy, conspirators also caused additional individuals to wire transfer at least $688,425 to bank accounts in the United States that were controlled by other conspirators known to the defendant. As described above, the individuals sent these wire transfers under the belief that they were purchasing vehicles available for sale that had been legitimately offered for sale at online marketplaces and in newspapers, when in fact the vehicles were unavailable for purchase from, and had been fraudulently listed for sale by, conspirators.

(i)    During the course of and in furtherance of the conspiracy, conspirators, including the defendant, forwarded to co-conspirators located abroad a portion of the funds sent by victims into the bank accounts they controlled. These transfers were effectuated by means including wire transfers to bank accounts located abroad and by Western Union transfers to individuals located abroad. Such transactions effected by the defendant during the course of and in furtherance of the conspiracy include:

i.      On or about May 20, 2013, the defendant wired $8800 from the Armand account to an account held at Allianz Bank Bulgaria in the name Constantin George Parpalac ("the Parpalac account").

ii.     On or about May 21, 2013, the defendant wired $9200 from the Armand account to the Parpalac account.

8

   iii.  On or about May 24, 2013, the defendant wired $8500 from the Colbert account to the Parpalac account.

Conspirators, including the defendant, also made cash withdrawals, including withdrawals of thousands of dollars at a time, from bank accounts that received payments from victims. In addition, conspirators, including the defendant, made purchases using the debit cards associated with bank accounts that received payments from victims.

  9.  The statement of facts provided above is provided to assist the Court in determining whether a factual basis exists for the defendant's plea of guilty, for criminal forfeiture, and for assessing relevant conduct for purposes of the United States Sentencing Guidelines. The statement of facts does not contain each and every fact known to defendant and to the United States concerning the defendant's and/or others' involvement in the offense conduct and other matters.

<u>Sentencing Guidelines Calculations</u>

  10.  The parties understand that the Court will take into account the United States Sentencing Guidelines, together with the other sentencing factors set forth at 18 U.S.C. § 3553(a), and will consider the U.S.S.G. advisory sentencing range in imposing the defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective November 1, 2016.

  11.  For purposes of determining the U.S.S.G. advisory sentencing range, the United States and the defendant recommend to the Court, pursuant to Rule 11(c)(1)(B), the following:

   (a)  Offense Level Calculations.

    i.  The base offense level for the count of conviction is 7, pursuant to U.S.S.G. §§ 2B1.1 and 2X1.1.

9

ii.     Pursuant to U.S.S.G. § 2B1.1(b)(1)(H), the offense level should be increased by 14 due to loss in excess of $550,000.

iii.    Pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i), the offense level should be increased by an additional 2 levels because the offense involved more than 10 victims.

iv.     Pursuant to U.S.S.G. § 2B1.1(b)(10)(C), the offense level should be further increased by 2 levels because the offense involved sophisticated means. In the alternative, the offense level should be increased by 2 levels pursuant to U.S.S.G. § 2B1.1(b)(10)(A) because the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials and pursuant to U.S.S.G. § 2B1.1(b)(10)(B) because a substantial part of the scheme was committed from outside the United States.

v.      Pursuant to U.S.S.G. § 2B1.1(b)(11)(A)(ii) and 2B1.1(b)(11)(B)(ii), the offense level should be further increased by 2 levels because the offense involved the possession and/or use of an authentication feature and the production and/or trafficking of an authentication feature.

vi.     Assuming the defendant clearly demonstrates acceptance of responsibility to the satisfaction of the government through his allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted pursuant to U.S.S.G.

10

§ 3E1.1(a). Furthermore, assuming the defendant accepts responsibility as described in the previous sentence, the United States will move for an additional one-level reduction pursuant to U.S.S.G. § 3E1.1(b) because the defendant will have given timely notice of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and to allocate its resources efficiently.

(b)     Recommended Offense Level.  Therefore, the parties agree to recommend to the Court a final offense level, prior to any downward departure, of 24 (the "Recommended Offense Level").  The defendant understands that the offense level as ultimately determined by the Court prior to any downward departure (the "court-determined offense level") may be different from the Recommended Offense Level.  The defendant likewise understands that the guidelines range as ultimately determined by the Court prior to any downward departure (the "court-determined guidelines range") may be based on an offense level different from the Recommended Offense Level.

(c)     A downward departure from the court-determined guideline range may be appropriate under U.S.S.G. § 5K1.1, as set forth herein.  The defendant is free to argue for a downward departure under provisions of Chapter 5 of the U.S.S.G. other than Section 5K1.1.

(d)     The defendant is aware that the Recommended Offense Level is a prediction, not a promise, and is not binding on the Probation Office or the Court.  The defendant understands that the Probation Office will conduct its own investigation and make its own recommendations, that the Court ultimately determines the facts and law relevant to sentencing, that the Court's determinations govern the final guidelines calculations, and that the Court

11

determines both the final offense level and the final guidelines range. Accordingly, the validity of this agreement is not contingent upon the Probation Officer's or the Court's concurrence with the above calculations. In the event that the Probation Office or the Court contemplates any U.S.S.G. adjustments, departures, or calculations different from those recommended above, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same. The defendant further acknowledges that if the Court does not accept the guidelines calculations of the parties, the defendant will have no right to withdraw his guilty plea.

<u>Cooperation</u>

12.     The defendant agrees to cooperate fully and truthfully with the United States and to provide all information known to him regarding any criminal activity. In that regard:

      (a)     The defendant agrees to respond truthfully and completely to any and all questions that may be put to him, whether in interviews, before a grand jury, or at any trial(s) or other court proceedings.

      (b)     The defendant agrees to be reasonably available for debriefings and pre-trial conferences as the United States may require.

      (c)     The defendant agrees to produce voluntarily any and all documents, records, writings, or materials of any kind in his possession or under his care, custody, or control relating directly or indirectly to all areas of inquiry and investigation

      (d)     The defendant consents to continuances of his sentencing hearing as requested by the United States.

13.     Nothing in this Plea Agreement requires the government to accept any cooperation or assistance that the defendant may choose to proffer. The decision as to whether and how to use

any information and/or cooperation that the defendant provides (if at all) is in the exclusive discretion of the United States.

14.     The defendant must at all times give complete, truthful, and accurate information and testimony and must not commit, or attempt to commit, any further crimes. The defendant understands that if he falsely implicates an innocent person in the commission of a crime or exaggerates the involvement of any person in the commission of a crime in order to appear cooperative, or if the defendant falsely minimizes the involvement of any person in the commission of a crime in order to protect that person, then the defendant will be in violation of the Plea Agreement. Should the United States determine that the defendant has failed to cooperate fully, has intentionally given false, misleading, or incomplete information or testimony, has committed or attempted to commit any further crimes, or has otherwise violated any provision of this Plea Agreement, the United States may in its discretion and as appropriate in light of particular circumstances: (1) prosecute the defendant for perjury, false declarations or statements, and obstruction of justice; (2) prosecute any other crime alleged in the indictment that would have otherwise been dismissed at sentencing; (3) charge the defendant with other crimes; and (4) recommend a sentence up to the statutory maximum.

15.     This Plea Agreement is not conditioned upon charges being brought against any other individual. This Plea Agreement is not conditioned upon any outcome in any pending investigation. This Plea Agreement is not conditioned upon any result in any future prosecution that may occur because of the defendant's cooperation. This Plea Agreement is conditioned upon the defendant providing full, complete, and truthful cooperation.

16.     If the United States in its sole discretion determines that the defendant has cooperated fully, provided substantial assistance to law enforcement authorities, and otherwise

complied with the terms of this Plea Agreement, prior to sentencing the government shall file a motion pursuant U.S.S.G. § 5K1.1 with the Court setting forth the nature and extent of the defendant's cooperation. The defendant understands that at the time this Plea Agreement is entered, no one has promised that a substantial assistance motion will be made on the defendant's behalf.

17.     The United States cannot, and does not, make any promise or representation as to what sentence the defendant will receive. The United States will inform the Probation Office and the Court of (a) this Plea Agreement; (b) the nature and extent of the defendant's activities with respect to this case and all other activities of the defendant that the United States deems relevant to sentencing; and (c) the nature and extent of the defendant's cooperation.

Agreements Relating to Sentencing

18.     If the government determines, in its sole discretion, that the defendant has provided substantial assistance to the government in the investigation and prosecution of another person who has committed an offense, then the government shall move the Court to depart downward from the court-determined guidelines range pursuant to U.S.S.G. § 5K1.1. In that case, the government, in its sole discretion, also may recommend that the Court impose a particular sentence or depart downwards to a particular extent. The defendant understands that the decision whether, and to what extent, to depart below the court-determined guidelines range rests solely with the Court.

19.     The parties understand that if the Court grants a government motion to depart downward pursuant to U.S.S.G. § 5K1.1 and thus pronounces a final guidelines range that is lower than the court-determined guidelines range, the Court will consider this lower, final guideline range together with other sentencing factors in determining the defendant's sentence.

20.     The defendant understands that if the government does not move the Court to depart downward from the court-determined guidelines range pursuant to U.S.S.G. § 5K1.1, the Court shall impose a sentence taking into consideration the court-determined guidelines range together with other sentencing factors. The defendant may not withdraw his plea of guilty because the government has determined not to make a motion pursuant to U.S.S.G. § 5K1.1.

21.     It is understood by the parties that the Court is neither a party to nor bound by this Plea Agreement and, after consideration of the U.S.S.G., may impose the maximum penalties as set forth above. The defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea. Similarly, the defendant understands that any recommendation by the Court related to location of imprisonment is not binding on the Bureau of Prisons.

22.     Regarding restitution, the parties acknowledge that the amount of restitution owed to victims is $834,841.75 and that pursuant to Title 18, United States Code, Section 3663A, the Court must order the defendant to make restitution in this amount, minus any credit for funds repaid prior to sentencing.

23.     The defendant agrees to pay a special assessment of $100 at or before the time of sentencing with a check or money order payable to the Clerk of the U.S. District Court.

## Forfeiture or Abandonment of Property

24.     The indictment charges that the defendant is liable to the United States for approximately $873,325, which funds are subject to forfeiture because these funds constitute proceeds of the violations alleged in Count 1. By entry of a guilty plea to Count 1 of the indictment, the defendant acknowledges that the property identified above are subject to forfeiture.

15

25.    The defendant agrees to the entry of a forfeiture judgment in the amount of $873,325 in that this property is subject to forfeiture. Prior to sentencing, the defendant agrees to the entry of a preliminary order of forfeiture relinquishing any right of ownership he has in the above-described funds and further agrees to the seizure of these funds so that these funds may be disposed of according to law. The defendant is unaware of any third party who has an ownership interest in, or claim to, the property subject to forfeiture and will cooperate with the United States during the ancillary stages of any forfeiture proceedings to defeat the claim of a third party in the event a third party files a claim.

26.    The defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

### Presentence Investigation Report/Post-Sentence Supervision

27.    The defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

28.    The defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer. The defendant understands that providing false or incomplete information, or

16

refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of his sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

29.     This Plea Agreement concerns criminal liability only.  Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity.  The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Middle District of Tennessee and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, including Immigration and Customs Enforcement, except as expressly set forth in this Plea Agreement.

30.     The defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service (IRS) in its collection of any taxes, interest, or penalties against the defendant.

Entry of Guilty Plea

31.     The parties jointly request that the Court accept the defendant's plea of guilty as set forth in this agreement and enter an order reflecting the acceptance of the plea while reserving acceptance of this plea agreement until the receipt of the pre-sentence report and sentencing.

Waiver of Appellate Rights

32.     Regarding the issue of guilt, the defendant hereby waives all rights to appeal any issue bearing on (i) the determination of whether he is guilty of the crime to which he is agreeing to plead guilty; and (ii) trial rights that might have been available if he exercised his right to go to

17

trial. Regarding sentencing, the defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within or below the guideline range associated with the Recommended Offense Level when combined with the defendant's criminal history category as determined by the Court. The defendant also knowingly waives the right to challenge the sentence imposed in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241, and/or 18 U.S.C. § 3582(c). However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence (i) within or above the guideline range associated with the Recommended Offense Level when combined with defendant's criminal history category; or (ii) below such guideline range if the government has moved for a downward departure pursuant to U.S.S.G. § 5K1.1.

Other Terms

33.     The defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which the defendant is liable, including providing financial and supporting records as requested by the United States Attorney's Office.

34.     Should the defendant engage in additional criminal activity after he has pled guilty but prior to sentencing, the defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Plea Agreement.

35.     Defendant agrees to consent to removal from the United States upon completion of his sentence, to waive all rights relating to any and all forms of relief from removal or exclusion,

18

to abandon any pending applications for such relief, and to cooperate with the Department of Homeland Security during removal proceedings.

Conclusion

36.     The defendant understands that the indictment and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person.

37.     The defendant understands that his compliance with each part of this Plea Agreement extends until such time as he is sentenced, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. The defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Plea Agreement, or may require the defendant's specific performance of this Plea Agreement. The defendant understands and agrees that in the event the Court permits defendant to withdraw from this Plea Agreement, or the defendant breaches any of its terms and the government elects to void the Plea Agreement and prosecute the defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of signing of this Plea Agreement may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of such prosecutions.

38.     The defendant and his attorney acknowledge that no threats have been made to cause defendant to plead guilty.

19

39.     No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

40.     <u>Defendant's Signature</u>: I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending indictment. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it.

Date: 03/28/2017.

_____
Vlad Diaconu
Defendant

41.     <u>Defense Counsel Signature</u>: I am counsel for the defendant in this case. I have fully explained to the defendant his rights with respect to the pending indictment. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to the defendant the provisions of those guidelines that may apply in this case. I have reviewed carefully every part of this Plea Agreement with the defendant. To my knowledge, the defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date: 3-28-17

_____
Luke A. Evans

Respectfully submitted,

Jack Smith
Acting United States Attorney

By: _____
Byron M. Jones
Assistant U.S. Attorney

20

By:
Mysti Degani
Trial Attorney

By:
John Webb
Deputy Chief

21